## J. M. ALLEBACH v. P. M. HUNSICKER.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF MONTGOMERY COUNTY.

Argued February 6, 1890—Decided February 17, 1890.

The plaintiff in ejectment may not avoid his own deed to the defendant,
valid on its face and under which the latter claims, by showing that it
was executed in pursuance of a lottery, and therefore invalid under § 52,
act of March 31, 1860, P. L. 396: Cf. Allebach v. Godshalk, 116 Pa. 329.

BEFORE PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 161 July Term 1889, Sup. Ct.; court below, No. 143
March Term 1888, C. P.

On March 16, 1888, Jacob M. Allebach brought ejectment
against Philip M. Hunsicker, to recover a certain portion of a
tract of 36 acres.  Issue.

At the trial on June 11, 1889, the plaintiff proved title in
himself for thirty-six acres known as the Rahn Farm, by deeds
dated April 7, 1869, and December 20, 1875, the possession of
the parcel in dispute, a part of the thirty-six acre tract, by the
defendant, and rested.

The defendant then put in evidence a deed to himself from
the plaintiff for a portion of the land in dispute, dated May
31, 1879, recorded; also a deed to himself from the plaintiff
for the other portion, dated also May 31, 1879, recorded, and
rested.

In rebuttal, the plaintiff called W. F. Hallman, and made
the following offers:

Plaintiff's counsel propose to prove by this witness that on
October, 25, 1875, and subsequently, the witness and others,
including the defendant, went into a scheme by which they
and the plaintiff were to put up the Rahn farm into a lottery;
that for the purpose of evading the lottery laws an agreement
in writing was drawn up and a certain amount of down money
paid, being at the rate of $50 for each lot, in conformity with

the plan of lots then prepared; that those lots were of different values, ranging in value from $1,000, at least, down to $50 apiece; that, to carry out the plan, they first appointed a committee on distribution, and then prepared a number of tickets, which they put into boxes; that then two boys were taken and they drew the numbers out of a hat, one boy drawing out a number and the other drawing out a name, and the witness kept an account and put down the name of the man and the number of the lot that he drew; that some drew prizes; that is, lots more valuable than others, and some drew the less valuable properties; that after the drawing was completed deeds were prepared by the committee, signed by Mr. Allebach, and delivered in pursuance of that lottery, and that amongst them were these deeds, for which there was no other consideration than the lottery; that prior to the drawing no one knew which lot he would get but each took his chances as already described.

Defendant objects on the ground that the purpose of the offer is to contradict on the part of the plaintiff his own deed.

By the court: Objection sustained; exception.[1]

Plaintiff's counsel offer to prove by this and other witnesses, that the deeds which the defendant holds were deeds executed and delivered in pursuance of an illegal lottery; that there was no other consideration moving between the parties than that set forth in the lottery; that the lottery scheme was devised by sixty-six others and the plaintiff, including the defendant, on or about October 25, 1875; that in pursuance of the lottery the defendant paid down $50 each on the two lots mentioned in this writ; that at that time it was not known which lot he would draw, but that would depend upon the result of the lottery, and that he drew Nos. 75 and 55 on the plan, being the premises described in the writ, as marked down by the witness, Mr. Hallman; to be followed by the production of the draft and a copy of the agreement referred to; this for the purpose of showing that the defendant's title to the premises had its origin and conclusion in pursuance of this illegal lottery.

Defendant objects.

By the court: Objection sustained; exception.[2]

The case was then closed on the testimony, when the court,

WEAND, J., directed the jury to return a verdict in favor of the defendant. A verdict for the defendant having been returned, and judgment entered thereon, the plaintiff took this appeal, assigning for error: 1, 2. The refusal of plaintiff's offers. 3. The direction to return a verdict for the defendant.

*Mr. Henry Freedley* and *Mr. Chas. Hunsicker,* for the appellant.

Counsel cited: Act of March 31, 1860, § 52, P. L. 329; Allebach v. Godshalk, 116 Pa. 338; Bredin's App., 92 Pa. 245.

*Mr. Louis M. Childs* (with him *Mr. Montgomery Evans*), for the appellee.

Counsel cited: Blystone v. Blystone, 51 Pa. 373; Gill v. Henry, 95 Pa. 388; Winton v. Freeman, 102 Pa. 366; Hershey v. Weiting, 50 Pa. 240; Perkins v. Savage, 15 Wend. 412; Funk v. Gallivan, 49 Conn. 124 (44 Am. Rep. 210); Myers v. Meinrath, 101 Mass. 368; Bredin's App., 92 Pa. 241; Nellis v. Clark, 20 Wend. 24; 2 Chitty on Cont., 11th ed., 982; 1 Wharton on Cont., § 352; Collins v. Blantem, 1 Sm. L. C., 8th Am. ed., H. & W., 722.

PER CURIAM:

This was an attempt by the plaintiff to set up his own turpitude to defeat his own deed. If the law sanctions this, we would be ashamed to sit here and administer it. Fortunately it does not. The deed upon its face was a valid instrument. The plaintiff could only avoid it by offering to prove the illegal consideration, viz., the lottery scheme, in which he was a participant, and by means of which he was enabled to sell this and a number of other lots. This evidence the court below properly rejected. Granted that under the act of March 31, 1860, the deed was void, it was not so upon its face; no part of the lottery transaction appeared thereon, and the plaintiff could only avoid it by showing his own share in the illegal transaction. This, under all our authorities, he could not do. It was said in Winton v. Freeman, 102 Pa. 366: "The books are full of cases where a party to the fraud has sought relief in the courts from the consequences of his unlawful act, but the decisions have been uniformly adverse to such applications.

It is not the province of the law to help a rogue out of his toils. The rule is to leave the parties where it finds them, giving no relief and no countenance to contracts made in violation of statutes;" citing Hershey v. Weiting, 50 Pa. 240; Evans v. Dravo, 24 Pa. 62. There may be some excuse, in some instances, for men in seeking to disentangle themselves from the web of fraud which they have spun round them, but for this plaintiff there is none. He sold this property by means of this lottery scheme; he received the money, and executed a deed. He retains the money, and now seeks to recover the property back upon the allegation that the deed is void under the act of 1860. It is seldom we meet with a claim so unblushing and conscienceless as this. The learned judge below was right in rejecting his offer of evidence, and to this extent keeping him honest.

Judgment affirmed.